ILDEFONSO ORTIZ RIVERA ET AL., Plaintiffs and Appellants, *v.* HEIRS OF MANUEL GONZÁLEZ MARTÍNEZ, Defendants and Appellees.

No. R-64-105.      Decided June 8, 1966.

*Francisco Aponte Pérez* for appellants. *Raúl Matos* for appellees.

MR. JUSTICE BELAVAL delivered the opinion of the Court on the question of extinguishment.

It is alleged that in 1893 Manuel González Martínez and Estefanía Rivera, both of whom were single and had no legal impediment to marry each other, had concubinage relations from which there was born in the town of Salinas, Puerto Rico, on May 10, 1894, Francisca Rivera, considered by the existing legislation at the time of her birth, the natural daughter of Manuel as well as of Estefanía. It seems that this natural daughter married one Ortiz, having begotten two children by that marriage: Ildefonso Ortiz Rivera, born April 6, 1923, and Irene Ortiz Rivera, born March 25, 1925.

The fact has been established that during the minority of Francisca (1894–1915), her mother Estefanía did not bring any action of filiation against Manuel González. It is also unquestionable that during the majority of Francisca (1915–1944), she did not bring either any action of

filiation against her putative father, Manuel González, during his lifetime nor one year after his death (1944–1945), it being evident that at the time of Manuel González' death his presumptive natural daughter, Francisca Rivera, was already 50 years of age. Upon the death of Francisca on August 1, 1961, her two legitimate children, Ildefonso Ortiz, aged 38, and Irma Ortiz, aged 36, filed an action of filiation against the heirs of Manuel González Martínez, seeking a declaration that Francisca Rivera was the natural daughter of Manuel González Martínez. When this action of filiation was filed on January 15, 1964, Manuel González had been dead for more than 19 years and plaintiffs' mother for more than two years.

The San Juan Court rendered judgment dismissing the complaint on the ground that the legal term provided by law for exercising the action of filiation had expired. The law applicable to the case is § 126 of the Civil Code of Puerto Rico, which provides: "The action for the recognition of natural children can only be established during the life of the presumptive parents, and a year beyond their death, except in the following cases: (1) If the father or mother shall have died during the minority of the child, in which case the child may bring his action before the first four years of his having attained his majority shall have elapsed. (2) If after the death of the father or mother there shall appear a written statement or document, of which no notice was previously had, wherein the child is expressly recognized. In this case the action shall be established within the next six months after the document has been discovered."

█  In their petition before us the presumptive natural grandchildren, plaintiffs-appellants herein, allege, among others which bear no relation to the issue involved, the commission of two errors: (1) the trial court held that the action of filiation in this case has prescribed or become extinguished; (2) that § 126 of the Civil Code of Puerto

Rico of 1930 still governs in Puerto Rico, notwithstanding the constitutional reform of 1952. It is our opinion that all actions for recognition of a natural child are subject to extinguishment, that is, to extinction by the mere lapse of the term established by law for the exercise thereof, and are not governed by the provisions on prescription. We shall attempt to state the nature of the institution before establishing the difference between "extinguishment" and "prescription." We shall first include the comments made in the *Diccionario de Derecho Privado* on the term "extinguishment" which, though summarized at length, are no less valuable: "Time, the measure of movement according to Aristotle, is a juridical fact having decisive influence in the juridical relations and which, concretely, is a determinative factor of the everlastingness of subjective rights in which, said Savigny, it acts directly. The existence of rights which may only be asserted within a specific space of time leads us to consider *extinguishment*. . . . In a less general sense but sufficiently broad to manifest its essence, by *extinguishment* is meant the decadence of a right or the loss thereof by the failure to comply, within the specific period, with the necessary formality or condition. The institution which we analyze bears close relation to the extinctive prescription. . . . The result reached in this respect in the present scientific doctrine is neither precise nor satisfactory, since only through comparative generalizations the differences of essence indicating the place where the line of demarcation should be drawn between the aforesaid two institutions in order to make extinguishment an autonomous institution may be presented as follows: (a) *By reason of the origin*, the cause of extinguishment may be conventional or legal. That of prescription is always legal. (b) *By reason of the ambit*, extinguishment extends preferentially to the so-called optional rights, that is, to specific rights to be asserted within a brief temporary space of time. Prescription, in turn, extends to

subjective rights in general. (c) *By reason of the manner of operating.* Extinguishment produces automatically and directly the extinction of the rights. Prescription, in turn, produces the extinction of the rights only through an exception. (d) *By reason of the appreciation,* the judge must take into consideration the extinctive period, although the time thereof may only appear from plaintiffs' statement. Prescription, in turn, will be appreciated only whenever it is invoked by the defendant, according to Enneccerus. (e) *By reason of the persistence.* Taking into consideration the automatic and direct way in which extinguishment operates, causes of interruption and suspension thereof do not normally occur in extinguishment; they do in prescription. (f) *By reason of the purpose.* The purpose of extinguishment is concretion, since it first tends to determine the time within which a right may be asserted (it responds to impulses of an objective reason). Taking into consideration the failure to exercise the rights and actions and their possible abandonment by the party bound to assert them, prescription provides their extinguishment (it responds to a subjective reason). (g) *By reason of the relation with the party.* In support of the differentiation in this note, Messineo has said that the extinguishment or abandonment presupposes the existence of a right, the acquisition of which by the holder does not materialize, while prescription refers to a right already acquired but the failure to assert it determines its extinguishment.

"Independently of these differentiations, growing out of diverse fields of the doctrine, it is necessary to mention others of jurisprudential making in our law, which sum up, in a certain way, the guides to be taken into consideration whenever the institution of prescription is placed in comparative relation with institution of extinguishment. Such distinguishing notes between each other are the following: (a) While extinguishment is based exclusively on the need to provide safety to the juridical traffic operating by the mere lapse of

time, prescription is based on the need to resolve the uncertainty of the rights and on a presumption of abandonment by the holder. (b) While extinguishment may be appreciated both at the instance of a party and officially by the court, prescription is appreciable only at the instance of a party. (c) While extinguishment does not admit in any case the interruption of time, the lapse thereof operating as its origin, prescription is susceptible of interruption by an act of the party who may be prejudiced thereby. These characterizations notwithstanding, it must be borne in mind that if from the undeniable inaccuracies of our scientific doctrine we turn to examine, even superficially, the norms of the first Spanish legal text, we may be able to appreciate, as stated by Castán, the no less inaccurate technique of our Civil Code in which the term extinguishment is simply employed some times and at other times it establishes cases of extinguishment without calling them by that name. . . . However, Pérez González and Alguer, De Buen, and other textwriters, in studying the differences between extinguishment and prescription, point out provisions of our Civil Code which regulate concrete instances of extinguishment, sustaining their value as such and placing them in a place different from that occupied by those which are unequivocally established as prescription by that Code. In this sense, they point out as periods of extinguishment the following: (a) Those relative to actions for annulment of marriage. (b) Those relative to actions to challenge legitimacy. (c) *Those established for the exercise of actions claiming legitimacy.* (d) That of the action challenging acknowledgment of the recognized minor." In the enumeration of the sections of the Spanish Civil Code corresponding to the periods of extinguishment pointed out, the *Diccionario de Derecho Privado* includes § 137 of the Spanish Civil Code (§ 126 of Puerto Rico), which provides: "Actions for the acknowledgment of natural children may be commenced only during the lifetime of the putative parents [or

one year beyond their death, according to our Code], except in the following cases: (a) If the father or mother died during the minority of the child, in which case the latter must commence the action within the four years next following the attainment of his majority shall have elapsed, and (b) if, after the death of the father or mother, some document, before unknown, should be discovered in which the child is expressly acknowledged. In this case the action shall be commenced within the six months next following the discovery of such document." See *Diccionario de Derecho Privado*, Appendix, pp. 178–80 (ed. Labor 1963).

In fixing the concept of extinguishment and the differences between extinguishment and prescription, Castán states as follows: "Prescription is closely related to the institution called extinguishment or abandonment of rights, which takes place when the law or the will of the parties agree on a fixed term for the duration of a right, which may not be asserted after the expiration of such period (1)—(1) Huc (in his Commentaire Du Code Civil) says that abandonment is the loss of a power, of a right, or of an action resulting only from the expiration of an extinctive period granted by law to exercise such right, such action, or such power. The most important differences—even though they be relative and as yet undetermined by the doctrine—between prescription and extinguishment, are the following: 1. Extinguishment may result from the private juridical act or from the law; while prescription always stems from the law. 2. The purpose of prescription—says Coviello—is to consider extinguished a right which, not having been exercised, may be considered abandoned by the holder; that of extinguishment is to fix in advance the time during which a right may be usefully asserted (4)—(4) Messineo points out that prescription presupposes a right already acquired, which becomes extinguished for lack of exercise, while extinguishment implies a right which is not acquired. In prescription, therefore, the

subjective reason of the failure to assert the right, that is, the real or presumptive negligence of the holder is taken into consideration; in pure extinguishment only the objective fact of the lack of exercise within the prefixed term is taken into consideration. 3. Prescription is applied to subjective rights *in general*, at least to patrimonial rights; extinguishment refers to *specific* rights—as a general rule, the so-called potential rights (5)—(5) 'Extinguishment—says Albaladejo —is generally applied not to the rights, properly speaking, but to the juridical powers the purpose of which is to promote a change of juridical situation (for example, to the power to challenge à contract or the marriage, or a *status of filiation*, etc.), whether or not of patrimonial character, while prescription applies to patrimonial rights (*Instituciones*, vol. I. No. 206, p. 482)'—which, not only for the best general interest but also for the interest of private parties, the law wishes that they be exercised within a brief term. 4. Prescription extinguishes actions and rights, generally through an exception, while extinguishment produces extinction directly and automatically. This is why Enneccerus says that the judge must take into consideration the extinctive period, even though the expiration thereof may only appear from plaintiff's statement; prescription, in turn, should be taken into consideration only when it is invoked by defendant. 5. Causes of suspension and of interruption are admitted in prescription. These causes, as a general rule, have no effect on extinguishment because the extinctive effect is radical and automatic. . . . Actually, the inaccurate technique of our Civil Code, and even of our scientific doctrine (still unelaborated on this point), do not permit the delimitation between cases of prescription and those of extinguishment. But there are reasons to sustain, more or less approximately—as is done by renowned writers (1)—(1) I-2 Pérez González and Alguer 192, Notes; I-De Buen, *Derecho Civil Común* 132, Note (3d ed.), that periods referring to actions for annulment of mar-

riage (§ 102, par. 3), challenging legitimacy (§ 114), claiming legitimacy (§ 118), challenging acknowledgment of the recognized minor (§ 137), are terms of extinguishment and not of prescription." See I-2 Castán, *Derecho Civil Español, Común y Foral* 850–54 (ed. Reus 1963).

According to Santamaría, the extinguishment or abandonment of rights should not be confused with prescription, although in certain instances it may be difficult to establish a real distinction between them. We copy: "The extinguishment takes place, says Castán in terms analogous with Coviello, when the law or the will of the parties have agreed on a fixed period for the duration of a right, which shall not be asserted after the expiration of such period. The distinguishing criterion between both institutes, prescription and abandonment, is not too clear, says Barassi, but it may be said that where the law has provided that a particular act, which represents the exercise of a right, be performed within a given period . . ."—as in the case of § 126 of the Civil Code of Puerto Rico, which provides: "The action for the recognition of natural children *can only be established* during the life of the presumptive parents and one year beyond their death"—"such period is the starting point of the extinguishment of the right in the caducity, as distinguished from prescription, in which the starting point is the fact of the failure to exercise the right. Once the right is timely asserted, extinguishment is prevented, but the party may lose it afterwards by prescription if the exercise thereof is interrupted during the time necessary therefor. (I-Messineo 195.) As respects its efficacy, the decadence, contrarily to what has been said above in connection with prescription, must be deemed *ex officio judicis*, for it constitutes a negative premise of the right; and it is not interrupted because it is not based on the presumption of abandonment of the right." See II J. Santamaría, *Comentarios al Código Civil* 1013–14 (ed. *Rev. Derecho Privado*, 1958).

In the same comments by Santamaría are included judgments of the Supreme Court of Spain setting out different details of the issue involved: "The prescription and the extinguishment which, not legally well defined, produce, as subject to the same presumption of abandonment, the same extinctive effect and have the common purpose of preventing that the rights remain indefinitely uncertain, offer, as a distinguishing factor, that while prescription is waivable, wherefore it may be taken into consideration only when it is alleged, extinguishment operates by itself compelling the trier to declare it de officio, as it has been declared, among other judgments, in that of April 30, 1940 (Judgment of December 7, 1943). And the question not being a period of limitation, properly speaking, but a preventive period or period of extinguishment, the doctrine on the different modes of interrupting the prescription of actions does not apply. (Judgment of March 10, 1942.) Although it is true that the Civil Code does not provide for proper distinction between 'extinguishment' and 'prescription,' it is also true that the jurisprudential doctrine distinguishes them, it being understood (Judgments of April 27, 1940 and September 25, 1950) that *when a specific period is prescribed within which to assert the right, there accrues a period of extinguishment*, after which the right no longer exists and it should so be held de officio, while prescription, on the contrary, makes reference only to the contentions which the parties may wish to raise, not to the rights which affect them, the latter being interrupted only by the exception made thereto and which is admissible only when the party expressly raises it. (Judgment of July 5, 1957.)" The foregoing comments are set out, prior to this exposition, in *Eisele* v. *Orcasitas*, 85 P.R.R. 84, 88–89 (Per Curiam) (1962).

■ According to Puig Peña: Extinguishment "is that juridical institution whereby, once the period which either the

law or the will of the parties establish or assign to the action has expired, the action may no longer be exercised in any manner whatever. Time has decisive and extinctive effect on extinguishment, but it operates only as a period without taking into consideration the negligence or impossibility of the holder of the right. . . . The ancient doctrine confused prescription with other juridical figures, the essence of which was the influence of time on the legal relations, until later the terms are technically distinguished. This separating tendency has been greatly exaggerated in German law. In French, Italian law—and in Spanish law—the discussion hinges on the difference between prescription and extinguishment, which is the name given in the Italian and French doctrines, unlike the German which calls it temporality of law or legal periods. . . . The most important differences, among the following: 1. Extinguishment may stem from a private juridical act or from the law, while prescription always stems from the law. 2. The purpose of prescription, says Coviello and Castán subscribes, is to consider extinguished a right which, because of the failure to assert it, may be considered abandoned by the holder; that of extinguishment is to fix beforehand the time during which a right may be usefully exercised. 3. Prescription admits causes of suspension and of interruption. These causes have no effect on extinguishment because the extinctive effect is radical and automatic. The textwriters, based on these considerations, point out the following juridical effects of the distinction: 1. Prescription operates always as exception and only the defendant and not the judge may assert it at a trial. . . . Extinguishment, in turn, prevents the accrual of the same right and the judge may take the same into consideration ex officio, without the need that it be alleged by any defendant. 2. While the action about to prescribe may be subject to a new prescriptive period, this is not the case with extinguishment, which may not be revived once it has been in-

curred. 3. Prescription does not run against all in those legislations admitting the principle *contra nom valentem agere non currit praescriptio*, while extinguishment runs against everybody." I-II Puig Peña, *Tratado de Derecho Civil Español* 453–55 (ed. *Rev. de Derecho Privado*, 1958).

Guaroa Velázquez, noted professor of the School of Law of the University of Puerto Rico, in establishing the difference between "extinguishment" and "prescription," expresses himself in the following terms: "The periods of extinguishment and of prescription have a common characteristic: in both the lapse of time affects the right or the prerogative; moreover, their effects are very similar: the expiration of the period produces the extinction of the right or the prerogative, and, on the contrary, the performance of the act or the useful timely exercise of the action safeguards its existence. But they differ in an essential point. While prescription is aimed at the consolidation of a state of fact in contravention of the law, extinguishment tends, on the contrary, to buttress a preexisting state of law removing it from any controversy, even though such state of law be contrary to the facts. Thus, after the one-year period granted by § 126 to establish the natural filiation has expired, the child, notwithstanding he is a natural child according to the facts, may no longer overturn the preexisting situation of law, that is, that the father was not the father from the juridical point of view. Extinguishment, on the other hand, differs from prescription because of the purpose which it pursues. While prescription is, above all, an institution aimed at ensuring social peace, wherefore it operates in an interest superior to that of the parties concerned, extinguishment, which affects the holder of a right or of a prerogative, operates for the purpose of safeguarding and protecting the interests of the person against whom this right or this prerogative may be asserted, that is, more broadly, to safeguard and protect the interests which the beneficiary of the extinguishment represents. The

purpose of extinguishment, in the hypothesis of § 126, is only to safeguard or protect private interests, those of the heirs of the natural father. Since extinguishment is an institution different from prescription, it is governed by different rules. Thus, the rules on interruption of prescription are not applicable to extinguishment. Let us see what the doctrine provides on this point. Rotondi: Since in matter of extinguishment 'the claim arises *ab origene*, provided with an ephemeral possibility of action, regardless of the reason against the making of the claim, the possibility of effectuating it ceases upon expiration of the period. An important consequence is that no cause of suspension or of interruption is admitted in connection therewith, if the right has not been exercised. Extinguishment is prevented only by performing the act provided by law.' Coviello: The negligence of the holder extending over a certain period causes the extinction of the right in the hypothesis of prescription; in turn, that cause, in the hypothesis of extinguishment, consists in the useless lapse of the fixed period. It follows, therefore, that the causes of the interruption of prescription are not valid to interrupt the period of extinguishment, since if they are valid for interrupting prescription it is only because of the impossibility or difficulty to act, which causes do not warrant the imputation of negligence to the holder; but since they may not overcome the objective fact of the failure to exercise the right, they cannot prevent the lapse of the period of extinguishment. Not even the causes which serve to interrupt the course of prescription may produce the same effect in the case of extinguishment. Josserand: 'The prefixed periods are governed by an entirely different statute from that which governs prescription. 1. They do not produce either suspension or interruption; by definition itself, they are pre-constituted and expire on the day set therefor, even if it is a holiday, and this loss cannot be prevented or deferred, nor by reason of a case of force majeure.' Ripert and Bou-

langer: 'The prefixed periods differ from prescription by reason of their purpose. They differ also in that they are not susceptible of extension either by a cause of suspension or by an interruptive act.' Dalloz: 'The rules on suspension and interruption of prescription do not apply to extinguishment.' It is obvious that the present § 126 of the Civil Code prefixes a period—one year counted as of the death of the father—to seek recognition of a natural child. This period is typical extinguishment." Guaroa Velázquez, *La Extinción de la Acción de Filiación en el Derecho Puertorriqueño*, XVII-4 *Rev. C. Abo. P.R.* 237, 247–49 (August 1957).

■ While in the civil case law of the Supreme Court of Spain there has been a slow but progressive development of the juridical term extinguishment—see, for example, the Judgment of October 29, 1928, 185 *Jurisprudencia Civil* 645, 650 (ed. Reus, 1930); the Judgments of April 27, 1940 and of April 30, 1940, VII Aranzadi, *Repertorio de Jurisprudencia* 303–04 (ed. Aranzadi of Pamplona); the Judgment of January 24, 1947, 17 *Jurisprudencia Civil* 322, 343 (ed. Reus, 1948); the Judgment of September 25, 1950, 31 *Jurisprudencia Civil* 1003, 1010 (ed. Reus, 1953); Judgment of July 5, 1957, 62 *Jurisprudencia Civil* at 269 (ed. Reus, 1960) —in the civil case law of the Supreme Court of Puerto Rico, some times in the past and at times at present, the term extinguishment has been confused with prescription and there has been employed the legislative term "can only be established" of § 126 of our Civil Code as something different from "extinguishment" when in reality of law they are the same thing. The result of this arbitrary use of the different juridical terms without differentiating them is the following: In *Gual* v. *Bonafoux*, 15 P.R.R. 545 (Mr. Chief Justice Hernández) (1909), it was held at pp. 554–56 that in the case of *prescription* the action for acknowledgment of natural children "must be prosecuted only within the time fixed in

article 137 of the Spanish Civil Code applicable to the case, it is evident that the *action disappears and extinguishes, after the lapse of the time allowed for its prosecution.* In fixing a certain and definite time for the exercise of the action for acknowledgment, it would seem that it was the purpose of said Code to avoid uncertainty and threat which might disturb the peace and tranquility of families. . . . We have purposely discussed the present question in the light of the former Spanish Code, because upon the publication of the Revised Code the plaintiffs had already forfeited all right to the acknowledgment they now claim; but if we examine the precepts of the Revised Civil Code relating to the matter, the case of the plaintiffs is not benefited thereby. Sections 198 and 199 of said Code read: Section 198: The filiation of children shall be proved by the certificate of the birth issued by the civil registry, by the possession of the status of filiation, or by any other legal means. Section 199: An action to claim filiation may be filed at any time within two years after the child shall become of age, and it shall be transmitted to his heirs, if he should die during his minority, or in a state of lunacy. In these cases heirs shall have five years during which to enter an action." As it may be seen, although the word "prescription" is used, the entire sense of the text refers to "extinguishment." The case of *Amsterdam et al.* v. *Puente et al.*, 16 P.R.R. 527, 531, 535–36 (Wolf) (1910), is similar to the preceding case, since although the term "prescription" is employed, what the illustrious writer had in mind was the extinguishment by expiration of the period: "In essence we do not think that the present case can be distinguished from the case of *Gual* v. *Bonafoux*, whether the time within which to bring an action is regarded as a condition precedent or an ordinary period of prescription. . . . The complainants had the right during the period expressed by one or other of these bodies of laws, and, not having brought it in time the action has prescribed. There

are other reasons for believing that it was the intention of the Legislature to limit the right of action. Without such limitation there would be no security to property in the Island of Porto Rico proceeding from a dead man's estate. Nothing less than the time of prescription limited in Book IV, Title XVIII of the Civil Code would prevent an unscrupulous mother from claiming that her offspring was a natural child of a dead man and as such entitled to share in the estate. . . . It is inconceivable that the Legislature desired to throw the doors wide open to such abuses of property rights, after the death of the father . . . the question of whether an action has prescribed must be resolved in favor of the Legislative intent as expressed either by section 199 of the present Civil Code or by section 137 of the Spanish Civil Code and in that event every natural child under any condition *who did not bring his action in time*, as provided by that section, would find himself forever barred. We think that the rights of complainants were *barred* by the legal precepts."

As is known, § 137 of the Spanish Civil Code of 1889, extended to Puerto Rico in 1889, provided: "Actions for the acknowledgment of natural children may be commenced only during the lifetime of the putative parents, except in the following cases: 1. If the father or mother died during the minority of the child, in which case the latter must commence the action within the four years next following the attainment of his majority. 2. If, after the death of the father or mother, some document, before unknown, should be discovered in which the child is expressly acknowledged. In this case the action must be commenced within the six months next following the discovery of such document."

The ruling in *Escobar* v. *Escobar et al.*, 16 P.R.R. 555, 556 (Wolf) (1910), was the same as in the previous two cases as if the question were one of "prescription," but the principle used to dispose of the case is one of "extinguishment of the period" and not of prescription, since prescription is

always subject to the will of the aggrieved party as being a subjective right and may also be waived, unlike extinguishment which is an objective right provided by law. A similar comment could be made on the case of *Rijos* v. *Folgueras*, 16 P.R.R. 593, 594 (Del Toro) (1910): "As it does not appear that the plaintiff had been acknowledged by her father in a public and authentic manner, nor that she had brought an action for filiation before the institution of these proceedings, it is clear that her right, if she ever had any, to obtain the judicial declaration of her acknowledgment as a natural daughter had *prescribed by operation of the law* at the time the complaint was filed." As we have seen, extinguishment always operates by virtue of preclusive period fixed by law. The case of *Calaf* v. *Calaf*, 17 P.R.R. 185, 201–04 (Mr. Chief Justice Hernández) (1911), is disposed of with less clarity: "The defense of prescription in an action for acknowledgment may be alleged even where the acknowledgment of natural children born under the regime of the Law of Toro is involved. . . . The action for acknowledgment of Juan Ramón Calaf is barred by prescription either under the provisions of article 137 of the Spanish Civil Code or of section 199 of the Revised Civil Code. But even admitting that neither the provisions of the Civil Code of Spain nor those of the Revised Civil Code governing the duration of actions for acknowledgment are applicable to the present case, there would still be Law 63 of Toro, which provides that personal actions shall prescribe in 20 years, and the action for acknowledgment of filiation partakes of the nature of personal actions. We cannot find any provision whatever in the laws in force at the date of the birth of Juan Ramón Calaf which exempts from prescription the action for acknowledgment, nor do we see why it should be regarded as incapable of prescription by reason of its nature; and great confusion would arise among families if this were so, because in such a case the descendants in

any degree of a natural child in possession of the right to acknowledgment could enforce their rights against the successors of the natural child."

It is since 1912 that the juridical term "extinguishment" began to take shape in our civil jurisprudence. The following facts are set out in *Jesús* v. *Succession of Pérez*, 18 P.R.R. 392, 395 (1912); "the plaintiff having been born on November 19, 1880, became of age on the same day and month of 1901, when she reached the age of 21 years, which is the majority age fixed by section 317 of said code, and she did not bring this action of filiation until August 30, 1911, which is the date borne by the complaint. Her action had already *expired* and has been terminated by the lapse of time fixed by law. . . . Isabel de Jesús vainly invokes in her favor Act No. 73, approved March 9, 1911, by the provisions of which actions for acknowledgment of natural children can be brought during the life of the parents as well as within one year after their death. That law is not applicable to the case at bar, because when the same went into effect the present action of filiation had already *expired* in accordance with section 199 of the Revised Civil Code, and the former law cannot revive a right that is already dead." In order to explain the application of our Revised Civil Code of 1902, the Court says: "Conformably to the Spanish Civil Code, Isabel de Jesús could have brought her action for acknowledgment during the life of her father. That period was limited to two years by the Revised Civil Code and began to run from the time she attained her majority. Notwithstanding the fact that she was capable of bringing this action from the time the said code went into effect, she has failed to do it, and brought it when the period fixed by law had already expired." Regarding "extinguishment" the reasoning is the same in *Questel* v. *Conde et al.*, 18 P.R.R. 727, 729–31 (Aldrey) (1912): "As during that time the action was not instituted, but was instituted eight years later,

the question now arises as to whether his right *extinguished* in such manner that a judgment in his favor cannot be legally rendered because of the insufficiency of facts to determine a cause of action, notwithstanding the fact that the defendants did not allege in their favor the prescription of the action, but, on the contrary, acquiesced in the complaint filed by the plaintiff. The answer to this question will depend on the nature of the legal provision contained in the aforesaid section 137. . . . The preceding citations show that this Supreme Court is of the fixed opinion that in accordance with section 137 of the Spanish Civil Code, as well as with 199 of the Revised Civil Code, the period for instituting an action for acknowledgment *lasts only during the time fixed by law*. On the expiration of these periods, therefore, the right *extinguishes*, ipso facto, and cannot revive . . . when, as we have said, the right *extinguishes* on the expiration of the period granted by law for the exercise thereof, although the defendant does not allege prescription, the plaintiff shall not for that reason have a cause of action." The same criterion is followed in *Roble* v. *Succession of Pérez*, 18 P.R.R. 894, 896 (Mr. Chief Justice Hernández) (1912) : "The Act of March 9, 1911, is not applicable to this case because under section 199 of the Revised Civil Code on that date the action to claim filiation had already prescribed, and the former law cannot impart life to a dead right. We so stated in the case of *Isabel de Jesús* v. *Succession of Ramón Pérez Villamil*, above cited," and in *Osorio* v. *Succession of Pérez*, 18 P.R.R. 896, 897 (Aldrey) (1912).

In *Santiago* v. *Succession of Matta*, 19 P.R.R. 159, 160–61 (Aldrey) (1913), again we considered the constitutional question whether the amendment to § 137 *supra* of the Spanish Civil Code, introduced by § 199 of the Revised Civil Code of Puerto Rico of 1902, impaired the rights acquired by natural children by virtue of the reduction of the extinctive period of the action: "The plaintiff, who was born in 1860,

filed her complaint on April 29, 1911, when Teodosio Matta, of whom she claims to be the acknowledged natural daughter, had been dead three months and the only question raised in this appeal is whether or not section 199 of the Revised Civil Code is contrary to the Constitution of the United States when applied to a case of this kind. The plaintiff, who was born when Law 11 of Toro was in effect, failed to bring her action to claim filiation during the existence of said law. Article 137 of the Spanish Civil Code, which took effect in this Island in 1890, provides that actions for the acknowledgment of natural children may be brought only within the lifetime of the putative parents, except where the father or mother had died during the minority of the child, in which case the child might bring the action before the first four years of its majority had expired; and except, also, that if after the death of the father or mother some instrument whose existence had not been known of before should be discovered, in which instrument the child is expressly acknowledged, then the action should be brought within the six months following the discovery of such instrument. The plaintiff also failed to bring her action while this law was in force. The Revised Civil Code went into effect in this Island in 1902, and section 199 thereof modified said article 137 of the Spanish Civil Code to the extent that an action to claim filiation may be filed at any time within two years after the child shall have become of age, and it shall be transmitted to his heirs if he should die during his minority or in a state of lunacy. In these cases heirs shall have five years during which to enter an action. Therefore, up to 1902 plaintiff could have brought her action under the provisions of article 137 of the Spanish Civil Code, for her putative father was then living, and notwithstanding the fact that said article was modified by section 199 of the Revised Civil Code, limiting the right of action to two years after the majority of the child, and although the

plaintiff was of age when this new law was enacted, she did not lose her right of action because in so far as regards persons who were already of age said two years should be computed from the time the code went into effect, and this provision of the new code does not affect minors only but also persons of full age in the manner stated, as was held by us in the case of *Jesús* v. *Pérez Villamil*, 18 P.R.R. 392. Both in that case and in others to be cited this court has held that a statute limiting or reducing the time allowed for bringing an action is not unconstitutional where a reasonable time is allowed for so doing before the action is barred by prescription. See the cases herein cited and our opinions in *Calaf* v. *Calaf*, 17 P.R.R. 185; *Gual* v. *Bonafoux*, 15 P.R.R. 545, and *Rijos* v. *Folgueras*, 16 P.R.R. 593. Therefore, section 199 of the Revised Civil Code is not unconstitutional because the plaintiff could have brought her action within two years from the date when said code went into effect, a period of time which we find to be reasonable and no allegation to the contrary having been made in regard thereto. The judgment should be affirmed."

Again some cases interchangeably use the terms "prescription" and "extinguishment," or join them as equivalent in the same meaning, or attach the same meaning in the implied content of the juridical provision. The case of *Rosado* v. *Succession of Matta*, 19 P.R.R. 291, 293 (Mr. Chief Justice Hernández) (1913), is a good example of this ambivalence: "And as the action to claim filiation did not prescribe until two years after Leoncia Rosado became of age, or, in other words, until January 12, 1911, it is obvious that when Teodosio Matta died on January 9 of the same year the plaintiff still had three days in which to exercise her right of action for filiation. She did not institute the same until May 22 and, therefore, when she did it was already extinguished or had prescribed for the reason that more than two years had elapsed since the date on

which the plaintiff attained her majority." In *Castro* v. *Solís et al.*, 19 P.R.R. 645, 649 (Aldrey) (1913), in comparing the citations of case law on extinguishment and the provisions on filiation applied with the concept of prescription employed by the illustrious writer, one realizes that he uses the term "prescription" as equivalent of "extinguishment." Let us see: "When Joaquín Leandro Solís died in 1897 the plaintiff was under age and retained her right of action in accordance with section 137 of the Spanish Civil Code, but under section 199 of the Revised Civil Code the action to claim filiation must be brought within two years after the child shall become of age, and as the plaintiff reached her majority in 1907, which according to section 317 is fixed at 21 years, said two years had *expired* when she brought her action in 1911 and therefore her right of action had *prescribed*. For this reason the trial court did not err in so deciding. That actions of filiation are subject to *prescription* and that children born under the rule of the Laws of Toro are subject to the provisions of subsequent codes relating to prescription are matters which have been discussed so fully and decided in the various judgments of this court that it is sufficient merely to refer thereto, especially when this is not the point raised by the appellant. See the cases of *Gual* v. *Bonafoux*, 15 P.R.R. 545; *Amsterdam* v. *Puente*, 16 P.R.R. 527; *Escobar* v. *Escobar*, 16 P.R.R. 555; *Rijos* v. *Folgueras*, 16 P.R.R. 593 . . . *Calaf et al.* v. *Calaf*, 17 P.R.R. 185." The meaning of "extinguishment," with which the term prescription is employed, the "instead of the obverse"—new term adopted by the latest psychology of images—is clear not only because of the reference to the sections on filiation which fix the periods of extinguishment and to the case law on extinguishment, but also because of the repudiation of the alleged imprescriptibility by the continued interruption of the prescriptive period created by the father's conduct. The same situation is present in *Peñaga-*

*rícano* v. *Peñagarícano*, 19 P.R.R. 472, 475 (Wolf) (1913);
*Figueroa* v. *Díaz et al.*, 20 P.R.R. 270, 273 (Mr. Chief Justice Hernández) (1914); *Castro* v. *Solís* (second case),
23 P.R.R. 478, 483 (Mr. Chief Justice Hernández) (1916).

In *Orta* v. *Arzuaga*, 23 P.R.R. 241, 248 (Del Toro)
(1915), the peculiar nature of the action of filiation and
the exceptional character of the prescription to which it gives
rise stands out, repeating: "The *peculiar nature* of an action
of filiation was clearly stated by this court in the case of
*Gual et al.* v. *Bonafoux et al.*, 15 P.R.R. 545. In delivering
the opinion of the court Mr. Chief Justice Hernández said:
'Nay, more; without taking into account what has already
been urged to show that the action for acknowledgment has
prescribed because the time allowed by the law applicable
to the case had expired, it appears to us that article 1973
of the Spanish Civil Code, which is section 1874 of the
Revised Code, is not pertinent to the *exceptional case of prescription* under consideration, inasmuch as article 1938 of
the former Civil Code, which corresponds to section 1839 of
the Revised Civil Code, prescribes that the provisions of
Title XVIII of both Codes, referring to prescription, shall be
understood without prejudice to what may be established
in either Code with regard to specified cases of prescription.
The case of prescription under consideration is special and
one of such a nature as to preclude *interruption*, for, if the
action for acknowledgment of natural children must be
prosecuted only within the time fixed in article 137 of the
Spanish Civil Code applicable to the case, it is evident that
the action disappears and *extinguishes, after the lapse of
the time allowed for its prosecution.* In fixing a certain and
definite time for the exercise of the action for acknowledgment, it would seem that it was the purpose of said Code
to avoid uncertainty and threat which might disturb the
peace and tranquility of families.' " (Italics ours.)

The case of *López* v. *López et al.*, 23 P.R.R. 766, 769–70 (Mr. Chief Justice Hernández) (1916), again expressly restores the notion of "prescription" (*caducidad*) in our civil case law: "The Act of March 9, 1911, is not applicable to the appellant. According to the complaint, the plaintiff was born in the year 1881 or 1882, and pursuant to article 137 of the Civil Code of 1889, he could have brought his action of filiation during the life of his putative father; but that article was modified by section 199 of the Revised Code, which provides that the action to claim filiation can be brought only within two years after the child becomes of age, or if he had attained his majority in 1902, only within two years after the said code went into effect, a construction which is necessary in order to make said section 199 constitutional. The plaintiff did not bring the action of filiation within the two years allowed him by section 199 of the Revised Civil Code, but only on November 16, 1915, when his action had *prescribed* (*caducado*). The statute cited cannot revive a right which has expired." However, in *Ramírez et al.* v. *Ramírez et al.*, 30 P.R.R. 574, 581 (Wolf) (1922), the term "prescription" is again used in a situation of facts similar to that in the preceding case.

The case of *Ciuró* v. *Ciuró et al.*, 31 P.R.R. 691, 693 (Wolf) (1923), reaffirms the peculiar nature of prescription of actions of filiation and its uninterruptibility: "According to this court, complainant should have begun his action within two years after coming of age, in accordance with section 199 of the Civil Code, and we held that the Act of 1911 did not revive the action. . . . Previously in *Jesús* v. *Succession of Pérez Villamil*, 18 P.R.R. 392, we had decided the same question, and in *Gual* v. *Bonafoux*, 15 P.R.R. 545, we held that the *prescription* of the rights of a natural child was of a different nature from *ordinary prescription* of debts and could not be interrupted." The case of *Vázquez* v. *Rucabado*, 33 P.R.R. 424, 427 (Aldrey) (1924), is one of extin-

guishment of action, but although there is properly applied the correct theory of extinguishment by the lapse of the legal period and not the concept of implied abandonment which is the basis of prescription, the term prescription is again used: "Inasmuch as in accordance with the said section of the Civil Code [§ 194, as amended by Act No. 73 of March 9, 1911 (Sess. Laws, p. 234), equivalent to § 126 of the Civil Code of Puerto Rico of 1930] an action for the acknowledgment of natural children can be brought only during the life of the presumptive parents, or within a year after their death, except in such cases as the same action prescribes, in none of which the plaintiffs are included, and inasmuch as the action of filiation set up in the amended complaint was brought on February 10, 1922, or more than one year after the death of Mateo Rucabado, which occurred when the plaintiffs were 24 and 28 years of age, respectively, that action is clearly barred."

In *Guadalupe* v. *González*, 34 P.R.R. 643, 647 (Del Toro) (1925), the term extinguishment by lapse of the period is again correctly applied, although it is employed in the sense of prescription: "But giving entire credit to the marriage certificate, and not only to it but also to the testimony of the midwife in all that is most unfavorable to the plaintiff, it would have to be admitted that the plaintiff was born about the year 1898 and that when she filed her complaint she was from 23 to 25 years of age and when the amendment of 1911 to section 194 of the Civil Code took effect she was from 13 to 15 years of age. Therefore, the law applicable according to the fourth of the Transitory Dispositions of the Civil Code would be section 194 of the said Code, as amended in 1911, and as by that amendment it is established that an action for acknowledgment can be brought during the life of the putative parents, or one year after their death, and as a year after the death of the putative father had not elapsed when the action was brought

in this case, the trial court erred in holding that the action was *barred.*"

In *Resto* v. *Silva,* 38 P.R.R. 299, 300 (Del Toro) (1928), the possibility of interruption of the prescriptive period of an action of filiation is again rejected, following the cases of *Gual* v. *Bonafoux* and *Ciuró* v. *Ciuró, supra,* and the term prescription is included, as stated in *López* v. *López,* already referred to: "But it is alleged that in the present case there has been an interruption or waiver of the right because the plaintiff has been continually since her birth in 1876, until the death of the father in 1926, in possession of the status of natural daughter. We understand that the action of the plaintiff *prescribed* in 1904, or two years after the Revised Civil Code went into effect, because she had attained her majority in 1902, and that the acts of the putative father subsequent to 1904 can not revive an extinguished right. *López* v. *López,* 23 P.R.R. 766. The prescription of the rights of a natural child is not of the same nature as the ordinary prescription of debts and can not be interrupted. *Gual* v. *Bonafoux,* 15 P.R.R. 545; *Ciuró* v. *Ciuró,* 31 P.R.R. 288."

This ambivalence in our doctrine on extinguishment of actions of natural filiation reaches its crisis in *Fuentes* v. *District Court,* 73 P.R.R. 893, 910 (Ortiz) (1952), in which it is held: "The afore-cited § 1873 of our Civil Code which determines the interruption of the prescription of actions by virtue of judicial claims, must be construed as applicable to actions of filiation and inasmuch as *Gual et al* v. *Bonafoux et al., supra,* establishes a contrary view, said case must be deemed overruled on this particular. *Ciuró* v. *Ciuró et al., supra,* and *Jesús* v. *Succession of Pérez Villamil, supra,* in which the same erroneous opinion as that of *Gual et al.* v. *Bonafoux et al., supra,* is set forth must also be overruled." The *Fuentes* case is a valuable study as to the other questions therein, but as to this question it is wrong.

■ From the detailed analysis which we have made of our early civil case law on "prescription" and "extinguishment," we have seen that, in considering each and all of the particulars of prescription in connection with interruption of the period, waiver of the period, equalization of family rights and patrimonial rights, extension of the legal period, etc., our case law has not placed extinguishment by the lapse of the legal period on the same footing as the ordinary prescription of the Civil Code. It could not do so, and it may not as yet be done, because it is a public policy institution in which it is necessary to protect the two parties to the civil relation involved without creating a mystic in favor of any of them. We have found the best answer against the principle of interruption in the aforesaid work by the noted professor of the University of Puerto Rico, Guaroa Velázquez: "Prescription is not an institution applicable to family law, since it is designed by law to be applied only to the sphere of private law (patrimonial), for the purpose of protecting individual interests of which the party may dispose, therefore, the rights which are outside of commerce, among which are those of filiation, cannot be subject to prescription and may not be disposed of by private persons. As stated by A. Colin and H. Capitant: 'Prescription is a form of waiver. Rights which cannot be alienated cannot prescribe either.' " (At p. 245.)

The subjection to the legal period provided by § 126 was reestablished in *Figueroa* v. *Heirs of Carrasquillo,* 74 P.R.R. 1, 4 (Pérez Pimentel) (1952) : "The facts alleged in the complaint established that Luisa O'Neill, plaintiffs' mother, enjoyed the status of natural child and that her father Antonio Carrasquillo Carrión died on June 11, 1951. Inasmuch as the complaint herein was filed in September of that same year 1951, the action was brought within a year after Carrasquillo Carrión's death, and therefore, it had not

prescribed, pursuant to the provisions of § 126 of the Civil Code which states that the action for the recognition of natural children can only be established during the life of the presumptive parents and a year beyond their death, except in certain instances, which we need not mention here."

As a question marginal to extinguishment, it would be well to clarify the intransmissibility by inheritance of the rights of any natural filiation other than the habilitation by tutelary representation or continuation of claim provided by our Code.

Let us see what Puig Peña says: "In view of its legal nature, the child alone may bring action to claim his status. No one, except his legal representative, if he is a minor, may exercise the same. Therefore, his creditors, regardless of their pecuniary interests, are excluded from seeking recognition of the filiation, and, consequently, so are the patrimonial rights of their debtor. The action lasts during the lifetime of the child, and his heirs may continue the same after it is brought if the claim has not prescribed. By exception, the heirs are vested with power to exercise the action initially if the child dies during minority or in a state of lunacy. In these cases the heirs shall have a period of five years within which to bring the action. The presumption is that he has been barred by his youth from making claim and that he has died without having had time to do so (if he has died after attaining majority, the presumption, on the contrary, is that he has waived the action, and this presumption may not be questioned). (12) — (12) In addition to the extinguishment of the claim, it is necessary that the action be terminated by dismissal or by some other means of terminating issues, since the legislative intent is undoubtedly that there be a pending action upon the death of the child." II-II Puig Peña, *Tratado de Derecho Civil* 28 (*ed. Revista de Derecho Privado*). Castán adds: "The Code is silent on whether the action for recognition may be trans-

mitted to the heirs of the natural child who has not brought the same during his lifetime (1), and it seems doubtful whether the provisions of § 108 [our § 113], which authorizes transmission of the action to claim legitimacy, may apply by analogy to natural filiation. (1) In other legislations the possibility is already clear that the child's heirs may exercise the action. Thus, the Venezuelan Code of 1942 provides in § 213 that 'the heirs or descendants may continue the action brought by the child if the same has not been dismissed or has not prescribed.' In the Argentine law, conceding that the heirs may bring action, the question arises whether they may only exercise the same under the conditions established by the Code for legitimate children (opinion of Lafaille), or whether they will not be affected by those limitations, since the exercise of one and the other action is different (thesis of Busso, Ojea and Borda)." 5-II Castán, *Derecho Civil Español, Común y Foral* 78 (7th ed. 1958, *Instituto Editorial·Reus*).

On the other hand, the obligation to recognize the decedent's natural children, except when the father or mother has died during the child's minority, or when after the death of the father or mother there appears some document of which no notice was previously had, expressly recognizing the child, in which two instances compliance must be had with the provisions of the Spanish § 137 (our § 126), is considered nontransmissible. 3 Oyuelos, *Digesto* 114–15. According to Borrell and Soler, there are two actions which must not be confused: the action seeking a declaration of filiation and the action challenging such filiation. The former is inherent in the child's personality, which may lead to the belief that it is *imprescriptible, at least while the child is living; however, the Spanish § 137 (our § 126) does not admit of such broad interpretation* since it provides specific periods: during the lifetime of the father, in Spain, and during the lifetime of the father or one year after his death, in Puerto Rico; if

the father or the mother has died during the minority of the child, in which case the latter may bring the action before the expiration of the first four years of his majority, in Spain and in Puerto Rico; if after the death of the father or of the mother there shall appear some document of which no notice was previously had, in which case the action may be brought within the next six months after the document has been discovered, in Spain and in Puerto Rico. IV Borrell and Soler 110 (ed. Bosch, 1954).

Antonio Cicu, noted professor of the University of Bologna, speaking on intransmissibility and, consequently, on the need for express statutory authorization during a specific period, states as follows: "Therefore, as long as the child is living, he alone may bring action for claim, without time limit, as we shall have occasion to see. After his death the law grants the action to his heirs and descendants, but on condition: (a) that the child has not brought the action during his lifetime; (b) that he has died during minority or during the first five years after attaining majority. The action of the heirs is not transmitted to them together with the inheritance, but is directly granted to them by law. The law ordinarily purports a hereditary transmission of the action, in support of which it provides due protection to the hereditary right; it therefore speaks of patrimonial action claiming status, the effects of which are limited to the mere declaration of the hereditary right. For us, who have excluded all of this, the granting of the action to the heirs as such is difficult to justify. In order to protect the egoistic interest of receiving an inheritance, the law would consent to the raising of such a delicate question of status that, if the child be living, he alone may raise it; it would therefore subject the protection of the paramount interest connected with the person's status to the protection of the individual and patrimonial interest of the heirs. We fail to find any

explanation other than the merely historical one which makes the heir the continuer of the decedent's personality, a protector of his moral interests, a conception underlying § 400 of the Penal Code which grants to the heirs the right to complain of the offenses inflicted to the memory of the decedent. This explanation, as we said, is merely historical since, as a result of the new concept of inheritance, it no longer has any value, which leads the interpreter to regard the said section as strictly exceptional. . . .

"In the status of persons a paramount interest, as we already said, is protected. Hence, the principle commonly accepted, though erroneously applied, that persons may not dispose of their status. This is an advantage for the holder thereof, but only on rebound. On the other hand, if the status is the organic belonging of a person to the family, such status may in nowise be separated from the person. This strict *personalism* of the status is also reflected on the actions claiming status [actions of filiation]. These are above all intransmissible. However, this character is debatable. In applying the distinction between moral and patrimonial actions, or of moral and patrimonial character, the doctrine declares that patrimonial actions claiming status are transmissible. It is led to make such a declaration by the fact that it sees a hereditary transmission of the action in the granting to the heirs of the action to claim and to challenge. We already said that rather than a transmission of action it is a direct attribute granted by law. It is easy to show that there is no transmission. In the first place, the action to claim status is granted above all to the descendants as such; as to them, there can be no transmission. In the second place, if the hereditary transmission is admitted, the transmission by legacy or by an act of will should also be admitted (we shall see that some admit transmission by legacy). But, above all, the very concept of transmission is not the concept applicable here. Transmission implies that the acquirer may assert as

his own the right; the property which the transmitter could claim as his own. In our case the heir should claim or challenge his own status; on the contrary, he claims or challenges the decedent's status. In other words, the intransmissibility is the necessary consequence of the inseparability of the status of the person to whom it attaches. That is why it does not seem doubtful to us that the action claiming and challenging paternity cannot be transmitted by will, nor exercised by the assignees of the inheritance, nor by the legatees, nor by the heirs of the heirs. It is not worth while to stop to emphasize the uncertainties and inconsequences of the doctrine on this matter which admits for the action to claim what it rejects for the action to challenge." Cicu, *La Filiación* 154–55, 161–62 (ed. *Revista de Derecho Privado*, 1930). We understand that pursuant to § 269 of the new Italian Code, the action of filiation of the child may be transmitted to his heirs, although subject to certain conditions. 3 Scaevola, *Código Civil* 417, footnote 2 (ed. Reus, 1942).

In fact, the preceding citation from Scaevola shows that, notwithstanding the writer's personal opinion, he believes that the matter is governed by the civil law. Let us see what he says: "The other question is whether the heirs of the deceased natural child may demand the recognition of the father. For instance: Whether a grandchild, if his predecessor has died without being recognized, shall have the right to be recognized by his grandfather. The Code always speaks of the child, without mentioning his descendants at all, and it does this not only when referring to the forced recognition but also to the voluntary. If to this we add that the law always employs the word 'recognized' when considering the successory rights of the natural children, and also bearing in mind the predominant restrictive spirit in everything concerning those children, the necessary inference is that the heirs of the latter [the natural children] lack such power."

According to Colin and Capitant, 1 Colin and Capitant, *Curso Elemental de Derecho Civil* 700–01 and 722 (ed. Reus, 1952): "The action of investigation of the natural filiation is *intransmissible and personal*. Hence, the child's heirs may not attempt to bring it if the child has died without exercising it, and as long as he lives no one but he, or his legal representative acting in his name, if he is a minor, may exercise this action. . . . Be that as it may, the fact is that in our opinion the jurisprudential system has been legislatively consecrated in the Act of November 16, 1912, concerning the investigation of the natural paternity. Section 340, paragraph 10, states formally that 'the action belongs only to the child,' wherefore it follows that no one may bring or continue the same after his death. . . . The Code only says expressly—though incidentally—that the child may exercise this action (§ 137, No. 1); the mother may also exercise the same during the former's minority (Judgments of May 13, 1902, and March 26, 1904); the tutor authorized by the family council may also bring the action in the name of the ward (Judgment of December 29, 1916). The Code provides a normal period for exercising the action and certain *exceptions*. The first is the lifetime of the putative parents. [§ 137, par. 1, French; § 137, Spanish; § 126, Puerto Rican.] By exception, it may be exercised after the death of the former, in two instances: '1. If the father or the mother shall have died during the minority of the child, in which case the child may bring his action before the first four years of his having attained his majority shall have elapsed. 2. If after the death of the father or mother there shall appear a written statement or document, of which no notice was previously had, wherein the child is expressly recognized' (§ 137). The four-year period provided in paragraph 1 of § 137 should not be construed in the sense that the child has to wait until he attains his majority in order to bring the action (Judgment of June 23, 1902); in fact, he may exercise the same

before the expiration of the first four years before attaining majority, regardless of his age; but we must not overlook the provision of § 133 [§ 125, last paragraph, of Puerto Rico], which requires, in order that a minor be recognized, certain guarantees and circumstances of tax intervention and judicial approval (Judgment of December 29, 1916). The document referred to in paragraph 2 of § 137 must have, in our opinion, an undubitable character [§ 135, No. 1, French; § 135, Spanish; § 125, Puerto Rican]; if the document is public, it shall not be necessary to exercise any action, since the recognition would be voluntary [§ 131, French; § 131, Spanish; § 125, second paragraph, Puerto Rican]. The action shall be brought against the father, the mother, or their heirs. Is the action transmissible to the child's heirs? The lack of a provision similar to that of § 118 [§ 118, French; § 118, Spanish, in force in Puerto Rico since May 10, 1894, when Francisca Rivera was born, which provides: 'The action to establish legitimacy may be brought at any time during the life of the person whose legitimacy is in question, and shall be transmitted to his heirs should he die during minority or in a state of insanity. In such cases the heirs shall be allowed a period of five years in which to bring the action. If the action has been commenced during the lifetime of such person it may be continued by his heirs after his death, unless it shall have elapsed before that time,'] points to a negative answer; but since in the assumptions of that section the transmission is fair, we are inclined to make an analogical application of the same, adapted to the hypothesis of § 137 [§ 137, Spanish; § 125, Puerto Rican]. In other words, resort may be had to the analogical application whenever the action of natural filiation is exercised during the lifetime of the putative parents [French, Spanish], or one year after their death [Puerto Rican], and in the event of death of the father or mother, during the child's minority, four years after the child attains majority; and

if the document shall appear after the death of the father or the mother, within the six months counted as of the date of the discovery."

As to the question of intransmissibility, we have commented as a whole the authorities on actions of legitimate filiation and the actions of natural filiation because of the doctrinal complex created by Art. II, § 1, of the Constitution of Puerto Rico, in the sense that "No discrimination shall be made on account of race, color, sex, *birth*, social origin, or political or religious ideas," and the provision of Act No. 17 of August 20, 1952 (Spec. Sess. Laws, p. 200) in the sense that "All children have, with respect to their parents and to the estate left by the latter, the same rights that correspond to legitimate children." We have been, nonetheless, warned at all times that legitimation is always established by virtue of certain legal presumptions growing out of the fact of the marriage between the father and the mother of the child, while in the case of children born out of wedlock it is necessary to establish by direct evidence the status of a child in a judicial declaration. However, the equalization of the rights derived from filiation call, as a question of convenience in the orderly course of justice, for the greatest possible uniformity of the remedies, the challenges, the extinguishment of the actions. In the same manner that, within the proceeding of legitimation, the rights of children legitimized by the subsequent marriage, the posthumous children, the surviving children, and errors in the registration have been grouped in the past, we must try to include the illegitimate children within the proceeding for the acknowledgment of natural children.

As it may be seen, the transmissibility of the action of filiation to the heirs of the natural children calls for an express legislative declaration, since the public interest involved in the question deserves careful and profound consideration of the historical, sociological, and demographic

circumstances. The codes having the same origin as ours, the Italian, the French, the Spanish, have preserved the same order as ours in the belief, and with good judgment, that the family institution should preserve its greater clarity, its safest identity in relation to the other social and economic groups which jointly with it form the human society. Thus, the challenges against legitimacy, the juridical status of each one of the members of a family, should be exercised with diligence, and if this is not done, the actions which may affect the ontogenic structure, the tutelary regime, the distribution of the family inheritance should become extinguished as soon as the legal period provided by the family law has expired. The Civil Codes have been equally cautious in sustaining the principle that the right to request filiation should be a very personal right of the child, intransmissible to his heirs in the absence of an express legal provision. The two exceptions recognized both by the doctrine and the civil law are, if the presumptive parents die during the minority of the child, in which case it is necessary to wait until the child is capable of forming by himself judgment on such an important matter, or if there appears some document, of which no notice was previously had, expressly recognizing the child. The result of this principle of absolute sovereignty of the child to determine his family status is that no one may recognize anyone as his child without the consent of the recognized person, since it is known that children owe duties to their parents which may be mortifying to their honor and injurious to their interests, such as the guardianships of the interdiction and the support according to the economic circumstances of the obligor. Moreover, there are children who prefer to keep their status of natural child rather than expose to scandal their mother's intimate history.

The study we have set forth in detail shows that the civil sections dealing with rights of filiation, both legitimate and

natural, equalized as to illegitimate filiation by Act No. 229 of May 12, 1942 (Sess. Laws, p. 1296), as amended by Act No. 243 of May 12, 1945 (Sess. Laws, p. 814), in the sense of declaring as natural children all the children born out of wedlock, whether or not their parents could have married at the time of conception, and by the provision of Art. II, § 1, of the Constitution of Puerto Rico and the provision of Act No. 17 of August 20, 1952, already copied, is an altruistic version of the European doctrine, with all the attributes of the best juridical intimateness and of the autonomy of the human being within society, and at the same time with a reasonable opportunity in the time and circumstances to repair any inequality between the fruit of the dogma and human passion.

■ The study also shows that the legal periods established by §§ 117, 126, and any others comprised in the actions for recognition and challenge of recognition are periods of extinguishment rather than of prescription. The difference between one and the other consists in that (1) the extinguishment periods always extinguish the right to the cause of action; (2) the purpose of prescription is to consider as extinguished a right abandoned by its holder, while the purpose of extinguishment is to fix in advance the time during which a right may be usefully asserted; (3) while prescription admits causes of suspension and of interruption of the period, extinguishment does not admit such causes because the extinctive effect is radical and automatic; (4) prescription must be always formulated as an exception to the feasibility of the right by the defendant whom it favors, who may waive the same if he prefers to do so, while extinguishment must be declared *ex officio judicis* by the judge as constituting "a negative premise of the right" (Santamaría); (5) "While the action about to prescribe may be subject to a new prescriptive period, this does not occur with extinguish-

ment which may not be revived once it has been incurred." (Puig Peña.)

Regarding the hereditary character of the action, we have already seen the cases in which because the child has died during his minority or has been in a state of lunacy, his heirs may bring the action granted to the child, or in the event of death of the child, continue the action already brought by the latter if the action has not become extinguished. This is common doctrine in filiation law, and it could also be applied to cases of filiation of the children born out of wedlock within our new constitutional climate, § 118 of the Spanish Civil Code, our supplementary law in the absence of a legislative provision to that effect. The important point in question, as we have tried to explain, is not to erect again an impassable barrier between the provisions concerning legitimacy and those concerning filiation, and to maintain the extinguishment periods free from any ambiguity since they are annointed with the wisdom of a special virtue in order to preserve the health of human society. When one considers that the period to seek recognition granted to a child born out of wedlock lasts during the lifetime of his putative parents and one more year after their death, one cannot conceive of any effect in which the contingency of time may produce an usury of the intention.

In commenting a lecture of Florencio Porpeta delivered before the College of Notaries of Valencia, 7-8 *Revista de Derecho Mercantil* 432 (1949), our colleague Sánchez Torres said that during one of the trips which the noted Belgian poet, Maurice Maeterlinck, made to Provenza, he saw a sun clock containing a Latin inscription which read: "Horas non numero nisi serenas" (I count only the hours of light).

The judgment rendered will be affirmed on the ground that the action has become extinguished. Regarding the second question on the hereditary transmissibility of the action, Mr. Chief Justice Negrón Fernández, Mr. Justice Pérez Pi-

mentel, Mr. Justice Hernández Matos, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages withhold their opinion in order to pass judgment at the proper time, whenever the resolution of the case so requires. Mr. Justice Santana Becerra and Mr. Justice Dávila did not participate herein.